| | | |
|---|---|---|
| DEBORAH MISOURIA<br>46 Summer Lane<br>New Oxford PA 17350 | * | IN THE |
| | * | UNITED STATES DISTRICT |
| Plaintiff, | * | COURT FOR THE |
| v. | * | DISTRICT OF COLUMBIA |
| GINA RAIMONDO, Secretary<br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Avenue<br>Washington, D.C. 20230 | * | |
| | * | |
| | * | CASE NO. _____ |
| Additional Serve: | * | |
| Marrick Garland, U.S. Attorney General<br>U.S. Department Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530-0001 | * | |
| | * | |
| and | * | |
| Civil Process Clerk<br>US Attorney's Office<br>555 – 4th Street, NW<br>Washington, DC 20230 | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**COMES NOW**, Plaintiff, Deborah Misouria, by and through her attorney, Paul V. Bennett, Esq., and Bennett Legal Services, Inc, and hereby sues Defendant U.S. Department of Commerce (hereinafter "Defendant") and states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"), and the Age

1

      Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (hereinafter "ADEA").

2. That all times set forth in the above-referenced Complaint, Plaintiff worked for the Office of Trade Promotions Program, an office within the U.S. Department of Commerce.

3. That all the actions complained of herein took place at Defendant's offices, located in Washington, D.C. (hereinafter referred to as "Defendant's premises", "ITA" or "I&A").

4. That at all times relevant hereto, Defendant is a federal public institution employing five-hundred (500) or more persons, and is an "employer" within the meaning of Title VII and ADEA.

5. Plaintiff engaged in numerous protected EEO activities. Around 2012, 2013 and July 11, 2019 (amended November 6, 2019 and March 22, 2021) when she filed EEO claims concerning race, color, sex, and age discrimination, and prior protected EEO activities.

6. Throughout Plaintiff's employment within the Office of Trade Promotion Programs, the Plaintiff alleged various unprofessional and/or illegal acts were taken towards her.

7. In accordance with Title VII and ADEA, Plaintiff properly exhausted her administrative remedies before timely filing suit.

**FACTS COMMON TO ALL COUNTS**

8. Plaintiff is an African-American, female born in the year 1963.

9. At all times relevant to the instant Complaint, Plaintiff served as an International Trade Specialist, GS-1140-12/13, with I&A, and ITA.

10. At all times relevant to the instant complaint, Gemal Brangman (African-American male, born after 1980), Supervisory International Trade Specialist, GS-14, served as Plaintiff's first-level supervisor.

11. At all times relevant to the instant complaint, Anne Grey, (Caucasian female born in 1954), Executive Director, SES, served as Plaintiff's second-level supervisor.

12. Prior to working in her current position, Plaintiff had worked for the U.S. Department of Commerce for approximately sixteen (16) years. Ms. Grey became aware of Plaintiff's race, age and gender upon Plaintiff's transfer into the Office of Trade Promotion Programs.

13. At all times relevant to the instant complaint, Anne Driscoll (Caucasian female, age unknown), Acting Assistant Secretary for I&A and Principal Deputy Assistant Secretary for I&A, SES, served as Plaintiff's third-level supervisor.

14. At all times relevant to the instant complaint, Dustin Ross (Caucasian male born in 1978), Senior Advisor, GS-1140-14, served as the Team Lead for Plaintiff's colleague, Renee Diggs (Black, female, age unknown), International Trade Specialist, GS-1140-13.

15. Ms. Grey served as Ms. Diggs' second-level supervisor. Ms. Diggs identifies as Black, female, and was 33 years old at the time of the instant complaint. With Ms. Grey as her second-level supervisor, Ms. Diggs received a promotion to a GS- 13.

16. At all times relevant to the instant complaint, Mr. Brangman and Ms. Grey served as the first-and second-level supervisors (respectively) for Plaintiff's colleague, Pamela Kirkland, International Trade Specialist, GS-1140-13. Ms. Kirkland identifies as Native American, female, and was born in 1962.

17. At all times relevant to the instant complaint, Ms. Grey and Ms. Driscoll served as the first- and second-level supervisors (respectively) for Plaintiff's colleague, Vidya Desai, International Trade Specialist, GS-1140-15. Ms. Desai identifies as Southeast Asian, female, and was aged thirty-nine (39) at the time of the instant complaint.

18. Plaintiff engaged in numerous protected EEO activities. Around 2012, she filed an EEO claim concerning race, color, sex, age, and prior protected EEO activity.

19. In 2013, Plaintiff complained about not receiving a performance award like her colleagues.

20. Throughout Plaintiff's employment within the Office of Trade Promotion Programs, the Plaintiff alleged various unprofessional and/or illegal acts were taken towards Plaintiff by Ms. Grey.

21. The operations of the Office of Trade Promotion Programs were disseminated in December 2019/January 2020, but Plaintiff remains on the department's payroll while she works with the Enforcement and Compliance Office on a detail.

22. In mid-2015, Plaintiff requested an HR Desk Audit. As a result of the 2015 Desk Audit, the Human Resource Department directed Ms. Grey to change Plaintiff's pay grade to GS-1140-12/13 because it was not legal to require someone to perform a high level of work without the appropriate salary. All of the actions taken against

Plaintiff in the present matter occurred after she engaged in these prior protected EEO activities.

23. As a result of the 2015 Desk Audit, the Defendant's Human Resource Department directed Ms. Grey to change Plaintiff's pay grade to GS-1140-12/13 because it was not legal to require someone to perform a high level of work without the appropriate salary. Plaintiff contends the desk audit was necessary due to Ms. Grey's bias towards her for her history of prior EEO activity and therefore constitutes a protected activity.

24. On or about July 24, 2017, Plaintiff was eligible to receive a step promotion to a GS-13.

25. As set forth above, in the instant matter, the denial of Plaintiff's sought-after promotion constitutes an adverse employment action. Between 2017 and 2019, despite being eligible for a career promotion to grade GS-13, Ms. Grey repeatedly denied Plaintiff the promotion, despite the fact that the work she accomplished was at the GS-13 level.

26. Plaintiff contends her supervisor's proffered reasoning about being able to perform the essential job duties for a promotion were unjustified as was Ms. Grey's contention that her alleged work product containing grammatic and spelling errors supported the denial.

27. Plaintiff disputes Defendant's proffered assertion that every staff member was required to justify his or her promotion in writing as a requirement for every staff member to be eligible for promotions in her department, insofar as other staff members were not required to format said writing in a detailed manner.

28. Plaintiff has been singled out by Ms. Grey regularly and is often spoken down to in meetings. Additionally, Ms. Grey tells her that she is "very lucky" and will often make statements in an overtly hostile manner when speaking with the Plaintiff.

29. Plaintiff's White and non-African-American Colleagues speak negative things about her to make Ms. Grey happy and Ms. Grey rewards them for it. Additionally, they tell false narratives to others outside her office about Plaintiff.

30. Plaintiff was improperly charged with being Absent Without Leave ("AWOL") on or about December 3, 2018 as alleged by Mr. Brangman.

31. On April 25, 2019, during her midpoint review, Plaintiff inquired about the status of her promotion to GS-13 and was told that Ms. Grey did not believe Plaintiff prepared the last justification for her promotion without assistance.

32. Prior to her mid-point review, Plaintiff was instructed to prepare a justification for her promotion without assistance or she could not be promoted.

33. Plaintiff's younger colleagues only presented small bullet point narratives for their justifications for promotion. However, Plaintiff was required to write a story with a beginning, middle and end to justify her promotion requests.

34. Black/African-American individuals had to perform extra duties in addition to what was normally assigned to the White/Non-Africa-American employees in order to receive their promotions. Those duties included, but were not limited to:

    * Being forced to cover the Non-African-American employees work for them when they fell behind in their duties. If a Black/Non-African-American person fell behind in their duties then they were not performing as a GS-13.

    * Taking on computer/IT roles such as learning how to code websites; take on unrealistic demands for fast turnarounds for editing web pages.

6

> \* Training the White/Non-African-American employees but then being told by management that Black/African American employees weren't able to perform our own jobs.
>
> \* Being forced to be in charge of the wheelchair in the event of a fire or attack to include having to create an escape plan, being told it was the Black/African-American employees' responsibility to make sure disabled employees gets down five (5) flights of stairs to safety. There was no formal training in this type of safety and security at all and the primary person in most cases was the Plaintiff.
>
> \* Being required to take care of all of the International Trade Specialists electronic and paper filing system so that the White/Non-African-American employees and favorite employees did not have to do it.
>
> \* Being required to create work, monitor the work, and grade the work of the only handicapped employee in the office because his supervisor did not want to assist him. Then, being asked to report negative things on that person so that they could use it to fire him.

35. On May 25, 2019, Plaintiff initiated a complaint with the Defendant, Office of Civil Rights, raising, in part, the allegations alleged in the above-captioned Complaint.

36. Renee Diggs contended that on or about June of 2019 she was requested and pressured by Ms. Grey to provide false information to Human Resources in order to support a proposition that Plaintiff had access to Ms. Diggs' computer and email going so far as to be willing to assist in the drafting of the false statement and pressuring Ms. Diggs to provide the statement, while Ms. Diggs was still on maternity leave.

37. Michael Costello, HR Specialist, stated to the Plaintiff that Ms. Grey reached out to him regarding the subject investigation launched by Ms. Grey and falsely indicated that Ms. Diggs accused the Plaintiff of illegally accessing her computer. Mr. Costello confirmed that these allegations were later deemed to be unsustainable.

38. On September 17, 2019, Plaintiff learned that Ms. Grey filed a charge of misconduct against her in which she was falsely accused of misuse of government property, stealing a coworker's government identification credential ("PIV") card, stealing a co-worker's password (Renee Diggs) and entering a coworker's computer and stealing one document from the coworker's government email using a government computer, and illegally accessing and writing inappropriate comments on the coworker's weblog.

39. In November 2019, Plaintiff amended her EEO Complaint to include the actions Ms. Grey undertook since her filing of the May 25, 2019, EEO Complaint.

40. On March 22, 2021, Plaintiff amended her EEO charge to include retaliation by the Principal Deputy Assistant Secretary for I&A, Anne Driscoll, for issuing a letter of reprimand in November 2020, for receiving an "unclear request" from Plaintiff for additional training courses, falsely claiming the reprimand was warranted as Plaintiff was not "a team player," was a "trouble maker" and because she (Plaintiff) "keeps stirring the pot."

41. On or about April 1, 2022, Plaintiff received her Notice of Right to Sue letter in the above-referenced EEOC matter.

## COUNT I
## GENDER DISCRIMINATION
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq.*

42. Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

43. Plaintiff is a member of a protected class, female, at the time of the subject discriminatory acts.

44. Plaintiff was qualified and satisfactorily performing her duties as an International Trade Specialist, GS-1140-12/13, with I&A, ITA for which she effectively was performing under the employ by the Defendant and was superior in her qualifications for promotion to International Trade Specialist GS-1140-13 than her male counterparts.

45. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her gender (female) - a protected class under Title VII. Had it not been because of Plaintiff's gender (female), or as a motivating factor, she would not have been denied promotional opportunities, been held to a higher standard in the application and selection process for promotion, been subjected to a hostile work environment by non-African American colleagues either at the behest or to curry favor with Ms Grey, been subjected to hostile treatment and criticism by Ms. Grey, been falsely accused with a pretext to deny promotion, and set up the stage for maliciously false disciplinary actions directed to Plaintiff.

46. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

47. That the effect of the practices complained of above on or about April 25, 2019 to the present were to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

48. That similarly situated male employees, including but not limited to Frank Spector, Dustin Ross, Mark Wells, Joe Hoelecko, Robert McIntire, Kevin Haley, Michael Thompson, and male interns, outside the protected class, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being denied promotional opportunities, being held to a higher standard in the application and selection process for promotion, being subjected to a hostile work environment by male colleagues either at the behest or to curry favor with Ms. Grey, being subjected to hostile treatment and criticism by Ms. Grey, and being falsely accused with a pretext to deny promotion and set up the stage for maliciously false disciplinary actions directed to Plaintiff.

49. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation, mental anguish, and attorney's fees and litigation costs.

50. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**RACE DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e,** *et seq.*

51. Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

52. Plaintiff is a member of a protected class, African-American, at the time of the subject discriminatory acts.

53. Plaintiff was qualified and satisfactorily performing her duties as an International Trade Specialist, GS-1140-12/13, with I&A, ITA for which she effectively was performing under the employ by the Defendant and was superior in her qualifications for promotion to International Trade Specialist GS-1140-13 than her non-African American counterparts.

54. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her race (African American) - a protected class under Title VII.

55. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

56. That the effect of the practices complained of above on or about April 25, 2019 to the present were to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (African-American).

57. That similarly situated non-African-American employees, including but not limited to, Frank Spector (White/Caucasian), Dustin Ross (White/Caucasian), Mark Wells

(White/Caucasian), Joe Hoelecko (White/Caucasian), Robert McIntire (White/Caucasian), Kevin Haley, (White/Caucasian), Anne Novak (White/Caucasian), Kelli Walters (White/Caucasian), Allison Moore (White/Caucasian), Jessica Dulkadir (White/Caucasian), Melissa Ethridge (White/Caucasian), Ashley Bubna (White/Caucasian) Amanda Ayvaz (Spanish American); Ethel Glenn (Spanish American); Michael Thompson (Hawaiian/Asian Pacific) Vidya Desai (Indian), and Non-African American interns, outside the protected class, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being denied promotional opportunities, being held to a higher standard in the application and selection process for promotion, being subjected to a hostile work environment by non-African American colleagues either at the behest or to curry favor with Ms. Grey, being subjected to hostile treatment and criticism by Ms. Grey, and being falsely accused with a pretext to deny promotion and set up the stage for maliciously false disciplinary actions directed to Plaintiff.

58. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation, mental anguish, and attorney's fees and litigation costs.

59. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**RETALIATION**
**(Adverse Actions and Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**(Race, Gender, and Prior EEO Activities)**
**42 U.S.C. § 2000e,** *et seq.*

60. Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

61. Plaintiff's protected activities have been numerous, processed and investigated over the course of 9 years, including but not limited to raising EEO complaints in 2012, 2013, July 11, 2019, November 6, 2019 and March 22, 2021 pertaining to, but not limited to, harassment, hostile work environment, denials of promotional opportunities, false accusations pertaining to workplace conduct based upon her race, color, gender, sex, age and in retaliation for prior EEO activities dating back to 2012.

62. The subsequent adverse employment actions and disparate treatment, as set forth in the above-referenced facts common to all counts, amounted to illegal retaliation based upon the frequency of retaliatory conduct, temporal proximity to continuous protected activities and retaliatory animus of Defendant's management.

63. That the aforementioned acts of retaliation for complaining of discrimination constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

64. The aforementioned legally protected activities were known by upper management to have occurred.

65. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an

employee based upon her legally protected activities and to discourage others from engaging in protected activities as colorfully explained, for example, by Ms. Grey and Ms. Driscoll when they commented on a number of occasions from 2012 up through March 2021, to Plaintiff and others that Plaintiff was a "trouble maker", "not a team player" and "keeps stirring the pot." Other examples pertain to the hostile manner in which she was treated by Ms. Grey concerning her performance as an employee, orchestrating a malicious investigation of Plaintiff by Ms. Grey and numerous unsubstantiated denials of Plaintiff's promotion request by Ms. Grey and Ms. Driscoll.

66. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiffs rights.

67. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT IV
## AGE DISCRIMINATION
### (Disparate Treatment)
Age Discrimination in Employment Act of 1967, as amended,
29 U.S.C. § 621, *et seq.*

68. Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

69. Plaintiff was highly qualified for the promotional position as an International Trade Specialist, GS-1140-13, with I&A, ITA for which he effectively was performing and served under the employ by the Defendant.

14

70. Plaintiff was subjected to adverse treatment, including without limitation, the above-referenced disparate treatment and adverse job actions as set forth in the Facts Common to all Facts and Counts I through III of this Complaint.

71. Plaintiff's age was the "but-for factor" behind the described adverse treatment.

72. All similarly situated International Trade Specialists, with I&A, ITA, under the age of 40 or substantially younger than the Plaintiff, including but not limited to, Renee Diggs, Kent Cambell, Gemal Brangman, Jeffery Odum, Graylin Presbury, Dustin Ross, Joe Hoelecko, Robert McIntire, Kelli Walters, Allison Moore, Jessica Dulkadir, Melissa Ethridge, Ashley Bubna, Ethel Glenn, and every intern, were treated more favorably than her as they were not subjected to unsound and out of course subjective denials of promotional opportunities, being held to a higher standard in the application and selection process for promotion, many were promoted within the first year compared to the length of Plaintiff's tenure, being subjected to a hostile work environment by younger colleagues either at the behest or to curry favor with Ms. Grey, being subjected to hostile treatment and criticism by Ms. Grey, and being falsely accused with a pretext to deny promotion and were not subjected to orchestrated maliciously false disciplinary actions and investigations directed to Plaintiff.

73. That the intentional discriminatory action complained of above was done with malice and/or with reckless indifference to Plaintiff's rights.

74. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT V
## RETALIATION
### (Disparate Treatment)
**Age Discrimination in Employment Act of 1967, as amended,
29 U.S.C. § 621, *et seq.***

75. Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

76. Plaintiff expressly incorporates herein the adverse actions and disparate treatment that occurred on or about April 25, 2019 to present as set forth in the facts common to all counts.

77. Plaintiff's protected activities have been numerous, processed and investigated over the course of 9 years, including but not limited to raising EEO complaints in 2012, 2013, July 11, 2019, November 6, 2019 and March 22, 2021 pertaining to, but not limited to, harassment, hostile work environment, denials of promotional opportunities, false accusations pertaining to workplace conduct based upon her race, color, gender, sex, age and in retaliation for prior EEO activities dating back to 2012.

78. To the best of Plaintiff's knowledge information and belief, similarly situated International Trade Specialists, with I&A, ITA who did NOT engage in protected Age Discrimination protected activities, including but not limited to Renee Diggs, Tiarra Hampton-Diggs, Kent Cambell, Gemal Brangman, Jeffery Odum,

Graylin Presbury, Frank Spector, Dustin Ross, Mark Wells, Joe Hoelecko, Robert McIntire, Kevin Haley, Anne Novak, Kelli Walters, Allison Moore, Jessica Dulkadir, Melissa Ethridge, Ashley Bubna, Amanda Ayvaz, Ethel Glenn, Michael Thompson, Vidya Desai, and every intern, encompassing all International Trade Specialists, with I&A, ITA in Plaintiff's Department, were not subjected to unsound and out of course subjective denials of promotional opportunities, being held to a higher standard in the application and selection process for promotion, being subjected to a hostile work environment by younger colleagues either at the behest or to curry favor with Ms. Grey, being subjected to hostile treatment and criticism by Ms. Grey, being falsely accused with a pretext to deny promotion and were not subjected to orchestrated maliciously false disciplinary actions and investigations directed to Plaintiff.

79. The subsequent adverse employment actions, as set forth in the above-referenced facts common to all counts, amounted to illegal retaliation insofar as the frequency of retaliatory conduct, temporal proximity to continuous protected activities and retaliatory animus of Defendant's management.

80. That the aforementioned acts of retaliation for complaining of age discrimination constitute unlawful employment practices pursuant to AEDA.

81. The aforementioned legally protected activities were known by upper management to have occurred.

82. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

83. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiffs rights.

84. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Deborah Misouria, Plaintiff, demands judgment against U.S. Department of Commerce, Defendant, as follows:

a. Clean Personnel file of Plaintiff;

b. Lost promotional opportunities be instituted with associated back pay;

c. $300,000.00 as compensatory damages;

d. Front pay and back pay;

e. Non-compensatory damages as deemed as appropriate by this honorable Court;

f. Reimbursement of travel expenses;

g. Telework accommodations;

h. Inter-Agency transfer;

i. Retirement fund reimbursement

j. Prejudgment and post judgment interest;

k. Award attorney's fees and costs, including expert witness fees, as allowed by law;

l. And for such other and further relief as this honorable Court deems just and equitable.

Respectfully submitted,

_____/s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)
Bennett Legal Services, Inc.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
(410) 353-4994
pbennett@bennettlaw.net

*Attorney for Plaintiff*


# **DEMAND FOR JURY TRIAL**

Deborah Misouria, Plaintiff, hereby demands that this matter be tried by jury.

_____/s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)